## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ELSA ALVAREZ                          *
                                      *
      Plaintiff                 *
                                      *
v.                                    *          **Civil No. 08-1648(SEC)**
                                      *
COMMISSIONER OF SOCIAL                *
SECURITY                              *
                                      *
      Defendant                 *
**************************************

## OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g), the "Social Security Act." Plaintiff seeks review of the Commissioner of Social Security's ("the Commissioner") denial of social security benefits (Docket # 2). The Commissioner of the Social Security Administration ("SSA") filed a Memorandum of Law in support of the decision to deny benefits (Docket # 11), and Elsa Alvarez ("Ms. Alvarez" or "Claimant") filed her own Memorandum of Law (Docket # 10). After reviewing the parties' filings and the applicable law, the Commissioner's decision to deny Plaintiff disability benefits will be **AFFIRMED**.

### Standard of Review

The scope of our judicial review of a Commissioner's final decision is limited both by statute and case law. See 42 U.S.C. §405(g). Section 405(g) provides that the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." In Richardson v. Perales, 402 U.S. 389 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938)), the United States Supreme Court defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401; see also Tsarelka v. Secretary of H.H.S., 842 F. 2d 529, 534 (1st Cir. 1987). Moreover, the First Circuit has held that this determination of substantiality must be made on the record as a whole. See Ortiz v. Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991). Furthermore, written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial

evidence, although these may serve as supplementary evidence for the Administrative Law Judge ("ALJ") to consider in conjunction with the examining physician's reports. Irrizary v. Commissioner of Social Security, 253 F. Supp. 2d 216, 218 (D.P.R. 2003). Lastly, "it is the Secretary's responsibility to choose between conflicting evidence." Burgos López v. Secretary of H.H.S., 747 F.2d, 37, 41 (1st Cir. 1984); see also Tremblay v. Secretary of H.H.S., 676 F. 2d 11, 12 (1st Cir. 1982).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, n.5 (1987). It is well settled law that a claimant is disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(a). In making this determination, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520; see, e.g., Goodermote v. S.H.H.S., 690 F.2d 5, 6-7 (1st Cir.1982).

The five-step inquiry made by the ALJ in determining whether a claimant is disabled is as follows. First, the ALJ asks: is the claimant currently employed? If so, she is not disabled; if she is not, then the ALJ must turn to the second question: does the claimant have a severe impairment (one which significantly limits his ability to perform work-related functions)? If not, then she is not disabled; if so, the ALJ must ask: does the claimant have an impairment equivalent to those contained in the regulations' Appendix I? If so, then she is automatically rendered disabled. If not, then the ALJ must determine if the claimant's

impairment prevents her from performing work that he has done in the past. If the ALJ determines that the claimant cannot perform her past work, then he must determine if claimant's impairment will prevent him from performing other work of the sort found in the national economy. If the claimant cannot perform any such work, she is disabled. If she is capable of performing work available in the economy, then she is not disabled under the Social Security standards. See Goodermore, 690 F. 2d at 6-7.

As stated above, the burden is on the claimant to establish that he is disabled, and unable to return to his past work. Id. at 7. However, if the claimant meets this burden, then it is the Secretary's burden to show that there are other jobs in the national economy that the claimant can perform, notwithstanding his disability. Id.; see also, Torres v. Secretary of H. H. S., 677 F. 2d 167, 168 (1st Cir. 1982); González-Alemán v. Secretary of H.H.S., 86 F. 3d 1146, 1996 U.S. App. LEXIS 11655 (1st Cir. 1996). In satisfying this burden, the Secretary may rely on a set of rules, referred to as Grids, which are basically a matrix "combining different permutations of the four essential factors set out in the statute (age, education, work, experience, and residual work capacity) and stating, as to each combination, whether a claimant with those characteristics is disabled or not disabled." Vázquez v. Secretary of H.H.S., 683 F. 2d 1, 2 (1st Cir. 1982).

Where a claimant has only strength limitations, that is, exertional limitations, the ALJ may rely on the Grids to meet the burden of determining that there are jobs available for the claimant in the national economy which he can perform. González-Alemán, 1996 U.S. App. LEXIS 11655 at * 2. However, if the claimant has non-exertional impairments, the Grid may not accurately reflect the availability of suitable jobs. Id. That is, considering that the Grid is based on a claimant's exertional capacities, "it can only be applied when a claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level." Rivera-Rivera v. Barnhart, 330 F. Supp. 2d 35, 37 (D.P.R. 2004)(Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994)). Therefore, in cases "where a nonexertional impairment significantly affects claimant's ability to perform the full range of jobs he is

otherwise exertionally capable of performing, the Secretary must carry his burden of proving the availability of jobs in the national economy by other means, typically through the use of a vocational expert." Miranda-Monserrate v. Barnhart, 520 F. Supp. 2d 318, 325 (D. P. R. 2007)(internal citations omitted). However, "should a non-exertional restriction be found to impose no significant limitation on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate." Rivera-Rivera, 330 F. Supp. 2d at 37-38.

In considering whether a claimant's residual work capacity is reduced by non-exertional limitations (i.e. a mental impairment), the Secretary must assess the claimant's mental capability for unskilled work, and his ability to cope with the demands of any work environment. See Miranda-Monserrate, 520 F.Supp. 2d at 326; Irlanda v. Secretary of H.H.S., 955 F. 2d 765, 769-770 (1st Cir. 1991).  The first inquiry focuses on whether a claimant is able to understand, remember, and carry out simple instructions, respond appropriately to the normal work environment, and to deal with the changes in a routine work situation. Id. The second inquiry requires determining whether a claimant can be punctual, attend work on a regular basis, accept supervision, and remain in the work place for an entire day. Id. at 326.

Finally, an ALJ is a lay fact finder that lacks the expertise to make a medical conclusion, and, as such, "he cannot interpret raw, technical medical data." Irrizary, 253 F. Supp. 2d at 219 (citing Rivera-Torres v. Secretary of H. H. S., 837 F. 2d 4, 7 (1st Cir. 1988); Berríos v. Secretary of H. H. S., 796 F. 2d 574, 576 (1st Cir. 1986)).

**Factual and Procedural Background**

Ms. Alvarez was born in 1963, she has two years of university level education, and work experience as an administrative assistant at the Commonwealth of Puerto Rico Corrections Administration. See T.R. at 91.  Ms. Alvarez stopped working at her position with the Commonwealth in October, 2004, and has not held other employment. Id. Relevant medical conditions she suffers from include depression, herniated lumbar disks, and bilateral carpal tunnel syndrome. Docket # 10 at 4.

Baez filed for disability benefits with the SSA on February 28, 2005, but her claim was denied, first on November 14, 2004, and upon reconsideration on May 6, 2006. A hearing was then held before Administrative Law Judge Theodore W. Grippoan ("ALJ") who found that Claimant was not disabled. T.R. 13. Her subsequent request for review before the Appeals Council was also denied. T.R. 9.

In his report, the ALJ concluded that Claimant suffered from severe impairments, including :

> . . . bilateral carpal tunnel syndrome, cervical and thoratic osteoarthritis, herniated discs at the L4-L5 and L5-S1 levels by magnetic imaging resonance (MRI) study degenerative disc disease at the L5-S1 level and major depressive disorder. The claimant also has mild arterial hypertension, diabetes, mellitus, fribromyalgia, gastric reflux, osteoporosis, and right thyroid nodules.

T.R. at 16.

The ALJ's report stated that the record supports the presence of medical impairments alleged by Ms. Alvarez, ". . . but not to the extent claimed. . ." and that ". . . the claimants's statements concerning the intensity, persistence and limiting effects of these symptoms **are not entirely credible.**"  T.R. at 20 (emphasis added).  This contrasted with the opinion of Claimant's treating physicians, who concluded that she suffered from severe major depression and severe neck and back pain, and that she was unable to work given her poor prognosis.

In his explanation of why he found the treating physicians' conclusions unreliable, the ALJ noted that Ms. Alvarez's psychiatric medical reports did not allude to impairment of "memory, attention, and concentration." T.R. at 17.  Furthermore, the hospital reports described her symptoms as improving, and that during her time under psychiatric treatment she had shown significant progress. As to Ms. Alvarez's physical afflictions, the ALJ found that the treating physician's conclusions proffered by Claimant of severe neck and back pain were refuted by her doctor's observations of a "normal motor system, reflexes, and sensory

system,"the patients normal range of motion, adequate gait, lack of marked degenerative changes in her spine, and by nature of her treatment and its infrequency. T.R. at 16. Regarding Ms. Alvarez' carpal tunnel syndrome, the ALJ noted that her "neurological system was normal, without signs suggestive of significant carpal tunnel syndrome." Id. He also noted that the consultive neurologist's examination showed that Ms. Alvarez could, ". . . grip, grasp, pinch and perform finger tapping and opposition of the fingers normally with both hands." Id. After reviewing these factors the ALJ concluded that Plaintiff's claims as to the severity of her condition were ". . . not supported by clinical [evidence] and laboratory findings and inconsistent with the rest of the medical evidence on record." T.R. at 21.

In light of this conclusion, and despite recognizing Ms. Alvarez's disabling impairments, at step four and five the ALJ found Plaintiff's residual function capacity would allow her to ". . . perform medium work affording the opportunity to alternate positions, not involving frequent climbing, balancing, stooping, kneeling, crouching or crawling and not requiring complex instructions." T.R. at 19. Accordingly, at step six the ALJ concluded that Plaintiff's prior position required light work, and did not entail following complex instructions. T.R. at 21. He furthermore stated that her position as an administrative clerk allowed for the frequent alternation of positions to avoid back pain, and did not require frequent ". . . climbing, balancing, stooping, kneeling, crouching, or crawling . . ." Id. This analysis, and the observation that she did not appear "acutely distressed," led to the decision that Ms. Alvarez had the residual functional capacity to perform her prior work, and was not disabled under the Social Security Act. T.R. at 20.

Luis A. Bonilla, a vocational expert, also appeared at the hearing, and Plaintiff was accompanied by legal counsel. T.R. at 13 & 27. When asked if a person showing symptoms similar to those the ALJ attributes to Ms. Alvarez's condition could continue working as an administrative assistant, the vocational expert answered to the affirmative. However, the vocational expert also stated that the symptoms described by Ms. Alvarez herself would create "difficulty in performing the job productively and precisely." T.R. at 35.

**Applicable Law and Analysis**

Claimant alleges that the ALJ did not use substantial evidence to reach his final conclusion. See Docket # 10 at 2. She also argues that the ALJ'S decision suffers from "...marked internal discrepancies and lack of coherence..."Id. at 9. More specifically, the challenge is directed at the conclusion that her conditions allow for medium work activity and that she is capable of performing a clerical job not requiring complex instructions. Id. at 10-11. Central to this argument is the allegation by Ms. Alvarez that the ALJ did not give proper weight to her treating physicians' reports.

As mentioned above, the ALR judge disregarded Claimant's treating psychiatrist's conclusion that Ms. Alvarez's depression has a poor prognosis for improvement.  Instead, the ALJ gave greater weight to the State Agency's evaluators, and her record as an outpatient at San Juan Capistrano Psychiatric Hospital. T.R. at 17-18. Furthermore, the ALJ discredited Dr. Robert Toro's conclusions, stating that his diagnosis was neither ". . .supported by the psychiatrist's own findings, nor by those of the record as a whole." T.R. at 19. This sentiment is reiterated by Orlando Reboredo Phd.  who assessed Claimant's functional capacity, and reviewed Dr. Toro's reports. Dr. Reboredo found that claimant did not suffer from a "severe condition," and that she can "sustain pace and attention, and persist at work activities during a regular workday or workweek, and can adjust to changes in schedules, routines or demands at work activities, and interact with public, coworkers, and supervisors." T.R. at 254. This assessment was affirmed by Dr. Omayra Ortiz, DDS psychiatrist. T.R. at 293-294. Also the discharge report from an ambulatory program at San Juan Capestrano Psyciatric Hospital noted significant improvement in Ms. Alvarez's condition. T.R. 305-308. Because it is appropriate  for an ALJ to create a sketch of Plaintiff's general mental condition from the opinions and findings of various physicians, this Court will not contest the finding that Plaintiff's severe description of her psychological symptoms was not entirely credible.Ramos v. Barnhart,  119 Fed. Appx. 295, 296-297 (D.P.R. 2005) (referring to Evangelista v. Secretary of Health & Human Servs.,

826 F.2d 136, 144 (1st Cir.1987))

Beyond the controversy regarding Claimant's mental health, the ALJ disregarded Claimants allegations regarding the severity of her physical symptoms. This Court should state that there is no controversy regarding the existence of her underlying conditions. Nevertheless, there are considerable disparities in the conclusions regarding the severity of her symptoms. For example, the Puerto Rico State Insurance Fund found that Claimant was coherent, and walks without difficulty. T.R. 168 & 176-177. Furthermore, neurologist, Dr. Zaida Boria[1], concluded that Ms. Alvarez suffered from "[l]umbar pain" but with "normal reflexes and no specific sensorial changes [correlating] with a muscolo-skeletal pain," and that she ". . . can sit, stand, walk and travel. She can handle and lift common objects." T.R. at 272. On the other hand, Ms. Alvarez's treating physician Dr. Lisette Alvarez Cordero noted that Plaintiff complained of "severe [back and neck] pain on palpitation and inflamation." T.R. 331. She also reaffirmed Claimant's conditions, and concluded that Claimant could not work. T.R. 330. However, Dr. Alvarez's conclusion was not explained, or based on any specific description of the limitations Claimant's conditions put on her functioning, rather the doctor alluded to vague "complications of health." Id. After carefully reviewing the record this Court agrees with the ALJ that there is no strong scientific evidence to support Ms. Alvarez's claims of extremely severe symptoms. The same is true of general practitioner Dr. Juan A. De Los Santos's conclusions that Plaintiff suffers from a bulging disk, major depression, and is disabled. T.R. at 192. Furthermore, various examinations by independent doctors  suggest that Ms. Alvarez is able to function normally in an office environment. Ramos, 119 Fed. Appx. at 206.

This Court must reiterate that, "it is the Secretary's responsibility to choose between conflicting evidence." Burgos López, 747 F.2d at 41. Of course, the ALJ must give considerable weight to treating physician's opinions in determining disability, and may only

---

[1] Dr. Boria also described Ms. Alvarez as "Alert. Well oriented in time, place and person. Good recent and past memory. Relevant, coherent and cooperative." T.R. at 270.

9

disregard these with a showing of good cause, namely: (1) that they are brief and conclusory, (2) not supported by medically acceptable clinical laboratory diagnostic techniques, or (3) are otherwise unsupported by the record. See Sánchez v. Commissioner of Social Security, 270 F. Supp. 2d 218, 221 (D.P.R. 2003). In the case at bar the ALJ found the severe conclusions submitted by Ms. Alvarez's treating physicians were not entirely supported by the record, or sufficient examinations. As stated above, this Court agrees with the ALJ at least to the extent that a review of the case shows that he grounded his reasoning squarely within the record, and thus was justified in choosing between conflicting evidence. Given that Ms. Alvarez primarily attacks the ALJ's reasoning considering the severity and extent of her symptoms, and this Court finds said reasoning to be sound, there is no need to explore for other theories that might undercut the Commissioner's position.

Nevertheless, this Court should note the ALJ consulted with a vocational expert who testified that a person with the disabilities attributed to her by the administrative process could continue her past relevant work as an administrative clerk.

**Conclusion**

In light of the foregoing, the ALJ's decision is hereby **AFFIRMED**, and the present action shall be **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of September, 2009.

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge